1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| EDWARD T. HUNTER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| OUTERWALL, INC., JEFFREY J. BROWN, NELSON C. CHAN, NORA M. DENZEL, DAVID M. ESKENAZY, ROSS G. LANDSBAUM, ERIK E. PRUSCH, and ROBERT D. SZNEWAJS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Case No. 2:16-cv-1285

CLASS ACTION

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTIES**

JURY TRIAL DEMANDED

18  Plaintiff Edward T. Hunter ("Plaintiff"), by his undersigned attorneys, alleges the following

19  on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are

20  based on personal knowledge.

21  **NATURE AND SUMMARY OF THE ACTION**

22  1.  Plaintiff brings this action as a public stockholder of Outerwall, Inc.

23  ("Outerwall" or the "Company") against the members of Outerwall's Board of Directors (the

24  "Board" or the "Individual Defendants") and Outerwall for their violations of Section

25  14(d)(4), and Rule 14d-9 promulgated thereunder by the U.S. Securities and Exchange

26  Commission (the "SEC") pursuant to Section 14 under the Securities Exchange Act of 1934,

27  COMPLAINT - 1

28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

as well as Sections 14(e), and 20(a), and on behalf of himself and the class of public stockholders of Outerwall against the Individual Defendants for breach of fiduciary duty under Delaware law.  Specifically, Defendants solicit stockholder approval of the sale of the Company to affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management VIII, L.P. ("Apollo Management") via its subsidiaries Aspen Parent, Inc. ("Parent") and Aspen Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction") through a recommendation statement that omits to state material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.     On July 25, 2016, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") by which the Apollo Funds, through wholly owned subsidiaries, would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Outerwall for $52.00 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $1.6 billion.

3.     On August 5, 2016, the Apollo Funds commenced the Tender Offer, which is set to expire at the end of the day, immediately after 11:59pm Eastern Time, on September 1, 2016 (the "Expiration Date").  The Tender Offer provides that the number of shares of Outerwall common stock that have to be validly tendered, together with the shares beneficially owned by the Apollo Funds, if any, must represent at least one share more than one-half (1/2) of the total number of outstanding shares of Outerwall common stock as of the Expiration Date or at the time and date to which the Tender Offer has been extended.  The Tender Offer is not subject to any financing condition.

4.     In connection with the commencement of the Tender Offer on August 5, 2016, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the process

COMPLAINT - 2

leading to the Merger Agreement. Without all material information Outerwall stockholders cannot make an informed decision to exchange their shares in the Exchange Offer.  The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction about whether to exchange their shares.

5.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under §§ 14(d), 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Outerwall maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion

COMPLAINT - 3

of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a stockholder of Outerwall.

10.     Outerwall is a corporation organized and existing under the laws of the State of Delaware.  It maintains its principal executive offices at 1800 114th Avenue SE, Bellevue, Washington, 98004.  Common stock in Outerwall is publicly traded on the NASDAQ under the ticker symbol "OUTR."  Outerwall is named as a defendant herein solely for the purpose of providing full and complete relief.

11.     Defendant Jeffrey J. Brown ("Brown") has been a director of the Company since April 2016.  Defendant Brown was appointed to the Board as a result of the Cooperation Agreement between Outerwall and Engaged Capital, LLC ("Engaged Capital").

12.     Defendant Nelson C. Chan ("Chan") has served as the non-employee Chair of the Board of Directors since June 2013 and has served as a director since July 2011.

13.     Defendant Nora M. Denzel ("Denzel") has served as a director since 2013.  She served as Interim Chief Executive Officer of the Company from January 2015 to July 2015.

14.     Defendant David M. Eskenazy ("Eskenazy") has served as a director since 2000.

15.     Defendant Ross G. Landsbaum ("Landsbaum") has served as a director of the Company since July 2014.

16.     Defendant Erik E. Prusch ("Prusch") has served as Chief Executive Officer and a director since July 2015.

17.     Defendant Robert D. Sznewajs ("Sznewajs") has served as a director since August

COMPLAINT - 4

1    2002.

2        18.    Defendants Brown, Chan, Denzel, Eskenazy, Landsbaum, Prusch, and

3    Sznewajs are collectively referred to herein as the "Individual Defendants" or the "Board."

4        19.    Defendants Outerwall and the Individual Defendants are collectively referred

5    to as the "Defendants."

6        20.    Apollo Management, a non-party, is a value-oriented global alternative

7    investment manager.  Apollo Management maintains its principal offices at 9 West 57th

8    Street, 43rd Floor, New York, New York, 10019.

9                        **CLASS ACTION ALLEGATIONS**

10       21.    Plaintiff brings his claim for breach of fiduciary duties against the Individual

11   Defendants (Count IV) individually and as a class action pursuant to Rule 23 of the Federal

12   Rules of Civil Procedure on behalf of all persons and entities that own Outerwall common

13   stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate

14   families, legal representatives, heirs, successors or assigns and any entity in which defendants

15   have or had a controlling interest.

16       22.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of

17   the Federal Rules of Civil Procedure.

18       23.    The Class is so numerous that joinder of all members is impracticable. While

19   the exact number of Class members is unknown to Plaintiff at this time and can only be

20   ascertained through discovery, Plaintiff believes that there are thousands of members in the

21   Class. As of August 4, 2016, there were approximately 17,215,401 shares of Company

22   common stock issued and outstanding. All members of the Class may be identified from

23   records maintained by Outerwall or its transfer agent and may be notified of the pendency of

24   this action by mail, using forms of notice similar to that customarily used in securities class

25   actions.

26       24.    Questions of law and fact are common to the Class and predominate over

27   COMPLAINT - 5

28

1   questions affecting any individual Class member, including, among inter alia:

2         (a)    Have the Defendants solicited stockholder approval of the Proposed

3   Transaction with a materially false, misleading and/or incomplete Recommendation Statement;

4         (b)    Is the Class entitled to injunctive relief or damages as a result of

5   Defendants' wrongful conduct;

6         (c)    Whether Defendants have disclosed and will disclose all material facts

7                about the Proposed Transaction to stockholders;

8         (d)    Have the Individual Defendants breached their fiduciary duties of loyalty

9   and/or care with respect to Plaintiff and the other members of the Class in connection with

10   the Proposed Transaction; and

11         (e)    Whether Plaintiff and the other members of the Class would be

12   irreparably harmed were the transactions complained of herein consummated.

13       25.    Plaintiff will fairly and adequately protect the interests of the Class, and has no

14   interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

15   Plaintiff has retained competent counsel experienced in litigation of this nature.

16       26.    A class action is superior to all other available methods for the fair and

17   efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in

18   the management of this action that would preclude its maintenance as a class action.

19       27.    Defendants have acted on grounds generally applicable to the Class with

20   respect to the matters complained of herein, thereby making appropriate the relief sought

21   herein with respect to the Class as a whole.

22                     **SUBSTANTIVE ALLEGATIONS**

23   **Background of the Company**

24       28.    Outerwall provides kiosks to retail stores, and owns several of the most visible

25   brands, including Redbox, Coinstar, and ecoATM.  Outerwall was founded in 1991 and is

26   based in Bellevue, Washington.

27   COMPLAINT - 6

28

                                **BRESKIN | JOHNSON | TOWNSEND** PLLC

                                1000 Second Avenue, Suite 3670

                             Seattle, Washington 98104  Tel: 206-652-8660

29.     In a press release dated July 25, 2016, the Company announced that it had entered into the Merger Agreement with the Apollo Funds, pursuant to which the Company will be acquired for $52.00 in cash in the Tender Offer.  This represents a total equity value of approximately $1.6 billion.

30.     In relevant part, the press release reads:

BELLEVUE, Wash. and NEW YORK, July 25, 2016 /PRNewswire/ -- Outerwall Inc. ("Outerwall" or the "Company") (Nasdaq: OUTR) today announced that it has entered into an Agreement and Plan of Merger (the "Merger Agreement") with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all of the outstanding shares of Outerwall common stock for $52.00 per share in cash.

The purchase price represents a premium of approximately 51 percent over Outerwall's closing stock price on March 14, 2016, immediately prior to the announcement that the Company's Board of Directors initiated a thorough and comprehensive process to explore strategic and financial alternatives to maximize shareholder value. The transaction, which was unanimously approved by Outerwall's Board of Directors, has a total enterprise value of approximately $1.6 billion, including net debt.

"Outerwall's Board of Directors has undertaken a comprehensive review of a wide range of strategic and financial alternatives to maximize value for all Outerwall shareholders. We are pleased to reach this agreement, which follows a robust process and provides an immediate and substantial cash premium to our shareholders," said Erik E. Prusch, Outerwall's Chief Executive Officer. "Apollo is an ideal partner to support Outerwall's efforts to continue serving our millions of loyal customers and dedicated retail partners through our unrivaled network of kiosks and automated retail offerings. We look forward to working closely with Apollo as we continue to strengthen our businesses and execute on our strategic plan."

"We are extremely excited for our funds to acquire Outerwall," said David Sambur, Partner at Apollo. "Outerwall is a dynamic customer-focused business that delivers superior kiosk experiences that delight consumers and generate value for its retailer partners. We look forward to working with Outerwall's talented and dedicated team to continue the business's strong heritage of growth and innovation."

31.     On August 5, 2016, the Apollo Funds commenced the Tender Offer and the Company filed the Recommendation Statement with the SEC.  The Tender Offer is currently

COMPLAINT - 7

scheduled to close on September 1, 2016.

***The Process Preceding the Execution of the Proposed Transaction***

32.     In the winter of 2015, the Company's stock price began to fall as the Company revised its guidance to reflect decreasing revenue from Redbox.  Following the initial filing of an 8-K on December 7, 2015, the stock price fell from $58.06 to $39.24 over the next five trading days.  After performance did not improve, the Company issued 2015 financials and guidance for 2016 on February 4, 2016 that caused a decline from $32.69 to $25.83 over the next five trading days.

33.     Given this rapid decline in the performance of the Company, Engaged Capital contacted the Outerwall on February 5, 2016 to notify it that the activist hedge fund had taken more than a 14% ownership interest in the Company.  Engaged Capital then filed a schedule 13D on February 8, 2016 disclosing this ownership and an amendment on February 18, 2016 containing a letter and presentation outlining its concerns and proposals for the Company.  Among these proposals, Engaged Capital suggested engaging financial advisors to begin the process of taking the Company private.

34.     Following these filings, Engaged Capital negotiated an agreement (the "Engaged Agreement") with the Company, executed on April 11, 2016, that granted Engaged Capital an immediate appointed director and two additional directors to be appointed on or before August 1, 2016.  The Company also agreed to retain separate legal counsel to evaluate strategic and financial alternatives.

35.     Before the Company entered into the Engaged Agreement, it had already begun to evaluate strategic and financial alternatives.  On March 4, 2016, the Company met with Perkins Coie LLP, its outside counsel, to discuss an engagement of Morgan Stanley & Co. LLC ("Morgan Stanley") to provide financial advice regarding a potential strategic process.  On March 13, 2016, the Board and Company management met with its advisors to discuss potential strategic alternatives and an increase in the quarterly dividend from $0.30 to

COMPLAINT - 8

1     $0.60 per share.

2        36.     On March 14, 2016, the Company publicly announced the initiation of a

3 strategic process, and the increased quarterly dividend.

4        37.     At the direction of the Board, Morgan Stanley began contacting potential

5 bidders between late March and late June 2016.  Morgan Stanley distributed a pitch of

6 publicly available information to 42 potential bidders, and the Company entered into non-

7 disclosure agreements with many of the bidders.  Morgan Stanley also held preliminary

8 informational telephonic meetings with a number of those bidders who had entered into non-

9 disclosure agreements.

10        38.     Between April 18, 2016 and May 6, 2016, Defendant Prusch and other senior

11 management held in-person and telephonic meetings with 15 potential bidders, and the

12 Company fielded various business and diligence inquiries.

13        39.     In the last week of April 2016, Morgan Stanley sent process letters to 22

14 bidders, directing them to submit a bid by May 5, 2016.

15        40.     Morgan Stanley received indications of interest from eight financial and

16 strategic bidders between May 5, 2016 and May 9, 2016.  These indications of interest

17 proposd price ranges from $27.00 to $57.00 per share in cash, with Apollo submitting an

18 indication with a range of $50.00 to $55.00 per share.  Company A submitted an indication of

19 $48.00 per share, and Company B submitted an indication from $55.00 to $57.00.

20        41.     The Board held a meeting on May 9, 2016 at which it discussed the bids.  The

21 Board then directed Morgan Stanley to invite bidders above $45.00 to continue in the process

22 and the lesser bidders to increase their bids in order to proceed.

23        42.     On May 12, 2016, Morgan Stanley distributed final bid process letters to the

24 five remaining parties, requesting final bids on June 24, 2016.

25        43.     On June 24, 2016, Company A submitted a bid of $48.00 per share, and

26 Apollo submitted a bid of $50.00 per share.  On June 26, 2016, Company B submitted a bid

27 COMPLAINT - 9

28

1    from $43.00 to $45.00 per share.

2        44.    The Board met on June 26, 2016 to review the proposals.  It directed Morgan

3    Stanley to inform Apollo and Company A that it intended to complete its strategic review in

4    July.  In a formal meeting on June 29, 2016, the Board discussed the proposals and the

5    affirmation from Apollo and Company A that they could complete the process by July 21,

6    2016.  The Board also directed Morgan Stanley to inform Company B that it would not be

7    invited to continue given its low bid.

8        45.    Over the month of July 2016, the Company negotiated merger terms with both

9    Company A and Apollo.

10        46.    During this time, Company management also held in-person meetings with

11    both Apollo and Company A to discuss business matters, including human resources and

12    employee benefits.

13        47.    On July 21st, the Company received final bids from Apollo and Company A.

14    Company A proposed a purchase price of $48.00 per share and permitted the Company to pay

15    its regular quarterly dividend of $0.60 per share.  Apollo restricted the Company's ability to

16    pay a dividend, but offered $50.00 per share.

17        48.    The next day, the Board held an in-person meeting to review the current

18    proposals.  The Board then directed Morgan Stanley to request best and final prices in

19    advance of a final meeting to be held July 24, 2016.  On July 23, 2016, Company A increased

20    its offer price to $50.32 per share. The next morning, Apollo revised its offer price to $51.75

21    per share, and agreed to allow the payment of the third quarter dividend of $0.60 per share.

22        49.    Apollo then increased its offer to $52.00 per share, while Company A

23    increased its offer to $50.82 per share.

24        50.    Later that afternoon, the Board reviewed the final proposals from Apollo and

25    Company A. Morgan Stanley presented its fairness opinion.  The Board then selected

26    Apollo's proposal, and unanimously approved the Merger Agreement and other agreements

27    COMPLAINT - 10

28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   required by the proposal.  The Company and Apollo finalized and executed the Merger

2   Agreement following the meeting.

3          51.     On July 25, 2016, the Company and Apollo announced the Proposed

4   Transaction.

5   ***The Recommendation Statement Fails to Disclose Material Information***

6          52.     The Individual Defendants have a fiduciary duty to disclose all material

7   information regarding the Proposed Transaction to Outerwall's stockholders so that they can

8   make a fully informed decision whether to vote for or against the Proposed Transaction.

9          53.     Nonetheless, the Recommendation Statement fails to disclose material

10  information and misleads stockholders regarding the Tender Offer.  The Recommendation

11  Statement fails to disclose any and all information pertinent to potential conflicts of interest

12  on the part of the Individual Defendants, including:

13              (a) any and all information pertaining to Apollo's first indication of the

14  possible continued employment of Defendant Prusch, or any other Outerwall officers,

15  directors, or employees following the consummation of the Proposed Transaction, including

16  but not limited to the timing, content, communications, parties, and form of such an

17  indication;

18              (b) whether Apollo ever made any communications pertaining to the potential

19  employment of any Outerwall officers, directors, or employees before entering into a

20  confidentiality agreement with Outerwall; and

21              (c) any and all information pertaining to the communications referred to in ¶

22  53(b), including but not limited to the timing, content, parties, and form of such

23  communications.

24         54.     As disclosed in the Recommendation Statement, early discussions with Apollo

25  took place with Defendant Prusch. Yet the Recommendation Statement fails to disclose

26  whether the parties discussed Defendant Prusch's employment or how the Company would

27  COMPLAINT - 11

28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    be run post-closing.

2         55.    The Recommendation Statement is deficient and misleading in that it fails to

3    disclose any information as to the nature and timing of post-merger employment discussions.

4    The Press Release announcing the Proposed Transaction treats such post-merger employment

5    as a given.  David Sambur, Partner at Apollo is quoted saying "We look forward to working

6    with Outerwall's talented and dedicated team to continue the business's strong heritage of

7    growth and innovation."  Furthermore, Defendant Prusch stated "'We look forward to

8    working closely with Apollo as we continue to strengthen our businesses and execute on our

9    strategic plan.'"

10        56.    Defendant Prusch also entered into a non-compete amendment to his

11   employment agreement as a condition to the signing of the Merger Agreement that lasts for

12   two years following the closing of the Proposed Transaction.  This amendment acts to ensure

13   that Defendant Prusch continues to lead the Company following Apollo's purchase.  The

14   Recommendation Statement does not disclose the negotiations concerning this condition to

15   the Merger Agreement.

16        57.    The timing and content of any discussion of future employment, even if it did

17   not result in the future employment of Outerwall executives, is material and must be

18   disclosed to Outerwall stockholders before the stockholder vote is held.

19        58.    With respect to the NDAs Outerwall negotiated and entered into with

20   "numerous potentially interested bidders" between late March and late June 2016, the

21   Recommendation Statement fails to disclose: (i) how many NDAs Outerwall entered into

22   with potential bidders; and  (ii) whether the NDAs contain standstill provisions that are still

23   in effect and currently preclude these potential bidders from making a topping bid for the

24   Company.

25        59.    The failure to disclose the information set forth above renders the following

26   information from the Registration Statement false and/or misleading:

27   COMPLAINT - 12                             BRESKIN | JOHNSON | TOWNSEND PLLC

28                                             1000 Second Avenue, Suite 3670
                                              Seattle, Washington 98104  Tel: 206-652-8660

(a)      from page 14 of the Registration Statement:

Between late March and late June 2016, at the direction of the Board, Morgan Stanley contacted 53 potential bidders, including both financial sponsors and strategic institutions. Morgan Stanley distributed to 42 potential bidders that expressed interest in further evaluating a potential transaction, a preliminary "teaser" containing public information about the Company and its applicable business lines, and an accompanying form of non-disclosure agreement, prepared by Perkins Coie, relating to the acquisition of the entire Company or one or more business lines. During that period, the Company negotiated and entered into non-disclosure agreements with numerous potentially interested bidders, and provided those potential bidders with additional Company-related materials. In addition, at the direction of the Board, Morgan Stanley held introductory telephonic meetings with a number of the potential bidders that had signed non-disclosure agreements and continued to express interest in evaluating a potential transaction, providing them with additional information and materials on the Company.

60.     The Recommendation Statement also fails to disclose material information relating to the Company's intrinsic value and prospects going forward, including the financial projections provided by Outerwall management and relied upon by Morgan Stanley in conducting its financial valuation analyses.  With respect to Outerwall's financial projections, the Recommendation Statement fails to disclose the Core Case, Unrisked Strategic Case and Downside Case financial projections provided by Outerwall management and relied upon by Morgan Stanley for purposes of its analysis, for fiscal years 2016-2020, for the following items: (i) gross profit; (ii) changes in net working capital; (iii) EBIT (or depreciation & amortization); (iv) taxes (or tax rate); (v) net income; (vi) earnings per share; (vii) changes in net working capital; (viii) stock-based compensation expense; (ix) free cash flow (for the Unrisked Strategic Case and Downside Case only); (x) any other adjustments to unlevered free cash flows; (xi) unlevered free cash flow (for the Core Case and Downside Case only); and (xii) reconciliation of GAAP net income to non-GAAP unlevered free cash flow and non-GAAP EBITDA.

61.     Omission of the aforementioned financial projections and details concerning the Core Case makes the following Recommendation Statement information false and/or

COMPLAINT - 13

misleading:

      (a)     From pages 27-29 of the Recommendation Statement:

In the course of strategic and financial planning following public announcement of the Company's audited fiscal year 2015 financial results and condition and its 2016 annual financial guidance, as well as Engaged Capital's initial public announcement of its security holdings and interests in the Company, the Company's management prepared certain unaudited, non-public financial information for fiscal years 2016 through 2020, including financial projections for a core case as set forth below (the " Core Case ") and certain upside and downside sensitivity scenarios focusing on projected effects of individualized assumptions. This unaudited, non-public financial information, including the Core Case, was developed by the Company's management from February to March 2016 as part of management's preparation of its updated five-year business plan and financial overview to account for, among other things, changes in assumptions and estimates relating to the secular decline of the Redbox business since fourth quarter fiscal 2015. The updated five-year business plan and financial overview, including the Core Case, were presented by the Company's management to the Board on March 3, 2016, and were provided to Morgan Stanley to consider in its analysis regarding the Company's potential exploration of strategic and financial alternatives.

Following the Board's decision in mid-March 2016 to publicly announce that it had determined that the Company would explore strategic and financial alternatives, the Company's management using, among other things, the Core Case, prepared certain additional unaudited, non-public financial information for fiscal years 2016 through 2020, including financial projections for a strategic case as set forth below (the " Unrisked Strategic Case "), in coordination with the preparation of materials for marketing the Company to potential buyers in April through July 2016, which Unrisked Strategic Case materials were intended to demonstrate the Company's optimal financial performance assuming the Company were sold to a buyer that could, among other things, effectively execute on certain growth initiatives and implement various corporate cost savings, as well as there being a less steep unit rentals decline in the Redbox business. In connection with preparing the Unrisked Strategic Case, the Company's management also made some non-material updates to the Core Case, which are reflected in the projections set forth below.

In late June 2016, the Company's management, using the Core Case, prepared additional unaudited, non-public information for fiscal years 2016 through 2020 to reflect a downside case as set forth below (the " Downside Case " and, together with the Core Case and the Unrisked Strategic Case, the " Company Forecasts "). The Downside Case materials were intended to provide context for the Board in considering the Company's strategic and financial alternatives, as well as buyer bids. On June 29, 2016 the Board reviewed the Company's other strategic and financial alternatives, as well as bids received from potential buyers.

COMPLAINT - 14

Although the Company's management and the Board considered the Unrisked Strategic Case and the Downside Case, as well as other information regarding upside and downside sensitivities, in evaluating the Company's strategic and financial alternatives, the Company's management believed and represented to the Board that management's best estimate of the Company's future financial performance for purposes of long-term strategic and financial planning and evaluation of strategic and financial alternatives was the Core Case.

As part of the bidding process and in order to assist in the completion of applicable financial analysis and due diligence review of the Company in connection with the Transactions, the Unrisked Strategic Case was provided to potential bidders, including Management VIII and Company A. Morgan Stanley was provided, among other things, the Company Forecasts, and the Company Forecasts were used by Morgan Stanley in connection with the rendering of its financial opinion to the Board and in performing its related financial analyses, as described under " Item 4—The Solicitation or Recommendation—Opinion of the Company's Financial Advisor."

The following is a summary of the Core Case:

| | Core Case ($ in millions) | | | | |
|---|---|---|---|---|---|
| Fiscal Year | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | 2,015 | 1,786 | 1,691 | 1,564 | 1,475 |
| Adjusted EBITDA (1) | 383 | 389 | 361 | 316 | 286 |
| Capital Expenditures | 56 | 49 | 48 | 47 | 47 |
| Free Cash Flow (2) | 192 | 191 | 206 | 173 | 151 |

(1) Adjusted EBITDA is defined as net income plus depreciation and amortization; interest expense, net; income taxes; and share-based payments expense.
(2) Free Cash Flow is defined as net cash provided by operating activities less capital expenditures.

The Core Case projected growth rates for individual years that result in an 8% compound annual decline in revenue from fiscal year 2015 (actual revenue) through fiscal year 2020, primarily due to secular decline in unit rentals in the Redbox business. The Core Case key assumptions and estimates for fiscal years 2016 through 2020 reflect, among other things, an annual unit rental decline in the Redbox business of 14-21%, partially offset by product margin improvement in Redbox unit rentals and price increases in the Redbox and Coinstar businesses, increased annual savings in the Coinstar business, and an increase in electronic devices and aggregate value per device collected in the ecoATM business.

The following is a summary of the Unrisked Strategic Case:

COMPLAINT - 15

| Unrisked Strategic Case ($ in millions) | | | | | |
|---|---|---|---|---|---|
| Fiscal Year | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | 2,029 | 1,924 | 1,923 | 1,897 | 1,979 |
| Adjusted EBITDA (1) | 388 | 434 | 434 | 416 | 430 |
| Capital Expenditures | 58 | 61 | 67 | 75 | 60 |
| Unlevered Free Cash Flow (2) | 220 | 237 | 263 | 234 | 253 |

(1)     Adjusted EBITDA is defined as net income plus depreciation and amortization; interest expense, net; income taxes; and share-based payments expense.

(2)     Unlevered Free Cash Flow is defined as net cash provided by operating activities less capital expenditures, plus tax-effected interest expense. In the materials provided in connection with the "fireside chats" to potential bidders, the Unrisked Strategic Case information was included in those materials except that the Unlevered Free Cash Flow amounts included therein were estimated at: $220 million for fiscal year 2016, $238 million for fiscal year 2017, $268 million for fiscal year 2018, $242 million for fiscal year 2019, and $261 million for fiscal year 2020. The difference between the initial Unlevered Free Cash Flow amounts for the Unrisked Strategic Case and the final Unlevered Free Cash Flow amounts for the Unrisked Strategic Case was due to differences in estimates of "cash in system" in connection with assumptions made relating to future international expansion in the Coinstar business.

The Unrisked Strategic Case projected growth rates for individual years that result in a 2% compound annual decline in revenue from fiscal year 2015 (actual revenue) through fiscal year 2020, primarily due to secular decline in unit rentals in the Redbox business. The key assumptions and estimates for fiscal years 2016 through 2020 underlying the Unrisked Strategic Case are the same as those underlying the Core Case, except that the Unrisked Strategic Case provided for a slower rate of unit rentals decline in the Redbox business (i.e., 20% decline in fiscal year 2016 and then 11-17% decline for fiscal years 2017 through 2020) and implementation of certain growth initiatives in the Redbox and Coinstar businesses, including provision of a digital sell-through video-on-demand service offering, a closed-loop marketing solution based on data accumulated through the Company's businesses and international expansion of the Coinstar business, and additional corporate cost savings.

The following is a summary of the Downside Case:

(1)     Adjusted EBITDA is defined as net income plus depreciation and amortization; interest expense, net; income taxes; and share-based payments expense.

COMPLAINT - 16

The Downside Case projected growth rates for individual years that result in a 9% compound annual decline in revenue from fiscal year 2015 (actual revenue) through fiscal year 2020, primarily due to secular decline in unit rentals in the Redbox business. The Downside Case key assumptions and estimates are the same as those underlying the Core Case, except that the Downside Case provided for a higher rate of unit rentals decline in the Redbox business (i.e., 14-22% decline in fiscal years

| Downside Case ($ in millions) | | | | | |
|---|---|---|---|---|---|
| Fiscal Year | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | 1,980 | 1,716 | 1,588 | 1,446 | 1,341 |
| Adjusted EBITDA (1) | 349 | 342 | 311 | 264 | 232 |
| Capital Expenditures | 56 | 48 | 46 | 45 | 44 |

2016 through 2020), lower margin improvements in the Redbox business due to higher product costs, lower annual savings in the Coinstar business, and no increase in electronic devices collected per kiosk per day and a lower increase in aggregate value per device collected in the ecoATM business.

62.     With respect to Morgan Stanley's *Discounted Cash Flow ("DCF") Analysis,* the Registration Statement fails to disclose: (i) the formula or definition of "free cash flow" utilized by Morgan Stanley in this analysis for each of the Core Case, Unrisked Strategic Case and the Downside Case and whether it is levered or unlevered (ii) the individual inputs and assumptions utilized by Morgan Stanley to derive the discount rate range of 8.6% - 9.7%; (iii) the basis for applying a range of NTM EBITDA multiples of 4.0x to 4.5x to calculate the terminal value and the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; (iv) whether Morgan Stanley treated stock based compensation as a cash or non-cash expense; and (v) the net debt utilized by Morgan Stanley in this analysis.

63.     Omission of key inputs and assumptions underlying the discount rate Morgan Stanley used in its DCF Analysis make the following Registration Statement information false and/or misleading:

(a)     From pages 25-26 of the Registration Statement:

**Discounted Cash Flow Analysis**

Morgan Stanley performed a discounted cash flow analysis to determine a range of potential equity values per Share, using the financial projections provided by the Company's management in each of the Core Case, the Unrisked Strategic Case and the Downside Case, as provided by the Company's management.

COMPLAINT - 17

Morgan Stanley calculated the present value of estimated future cash flows and terminal value for the Company for the three and half years from June 30, 2016 through December 31, 2020 from the projections provided by management. Morgan Stanley calculated the terminal value for the Company by applying a range of NTM EBITDA multiples of 4.0x to 4.5x to the Company's estimated calendar year 2020 EBITDA. The free cash flows and terminal values were discounted to present values as of June 30, 2016 using discount rates ranging from 8.6% to 9.7%, which discount rates were selected, upon the application of Morgan Stanley's professional judgment and experience, to reflect an estimate of the Company's weighted average cost of capital. Based on the Company's net debt balance (excluding cash in kiosks, cash in transit and cash identified for settling accrued payables to retailer partners in relation to Coinstar kiosks) as of June 30, 2016 and the outstanding shares of the common stock of the Company on a fully diluted basis as provided by management, Morgan Stanley calculated (i) a range of potential equity values of $41.00 to $49.50 based on the Core Case, (ii) a range of potential equity values of $71.00 to $83.75 based on the Unrisked Strategic Case, and (iii) a range of potential equity values of $27.50 to $34.25, based on the Downside Case, in each case, per Share, as rounded to the nearest $0.25.

64.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Individual Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934**

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

67.     As discussed above, Outerwall filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

COMPLAINT - 18

68.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

70.     In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

71.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

72.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

COMPLAINT - 19

therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

73.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Individual Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

76.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

77.     The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

78.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the

COMPLAINT - 20

Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

79.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

80.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

**COUNT III**
**Individual Claims Against All Defendants for Violations of § 20(a) of the**
**1934 Act Against the Individual Defendants**

81.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of Outerwall within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Outerwall and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

COMPLAINT - 21

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Recommendation Statement.

85.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

86.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)(4) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## COUNT IV
### Class Claims Against Individual Defendants for
### Breach of Fiduciary Duties

87.     Plaintiff repeats all previous allegations as if set forth in full herein.

88.     The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to Outerwall and its public stockholders and have acted to put their personal interests ahead of the interests of Outerwall and its stockholders.

89.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and the other public stockholders of the Company of the true value inherent in and arising from Outerwall.

COMPLAINT - 22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

90.   The Individual Defendants have violated their fiduciary duties by approving the Merger Agreement without regard to the effect of the Proposed Acquisition on Outerwall and its public stockholders.

91.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Outerwall, Plaintiff and the Class.

92.   As a result of the Individual Defendants' unlawful actions, Plaintiff and the public stockholders of Outerwall will be irreparably harmed in that they will not receive their fair portion of the value of Outerwall's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Outerwall and its public stockholders, will not engage in arm's-length negotiations on the Proposed Acquisition terms and may consummate the Proposed Acquisition, all to the irreparable harm of Outerwall and its public stockholders.

93.   Outerwall and its public stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Outerwall and its public stockholders be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

94.   Plaintiff and the Class have no adequate remedy at law

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)   declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)   declaring that the Recommendation Statement is materially false or misleading;

(C)   enjoining, preliminarily and permanently, the Proposed Transaction;

COMPLAINT - 23

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

DATED this 16th day of August, 2016.

BRESKIN JOHNSON & TOWNSEND PLLC

By: /s/ Roger M. Townsend
    Roger Townsend, WSBA # 25525
    1000 Second Avenue, Suite 3670
    Seattle, Washington 98104
    206 652 8660 Phone
    206 652 8290 Fax
    rtownsend@bjtlegal.com

OF COUNSEL

LEVI & KORSINSKY LLP

By: /s/ Elizabeth K. Tripodi
    Elizabeth K. Tripodi, Esq.
    1101 30th Street NW, Suite 115
    Washington, DC 20007
    Tel: (202) 524-4292
    Fax: (202) 333-2121

COMPLAINT - 24